UNITES STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN- NORTHERN DIVSION

ESTATE OF JOHN TIMOTHY MACDORMOTT,
DECEASED, BY HIS PERSONAL REPRESENTATIVE,
CAROLYN JOYCE MACDORMOTT,

     Plaintiff,

vs.

                                                            Case No.
                                                            Hon.

THE UNITED STATES OF AMERICA,
DANNY D. GREIG, II, M.D., MIDMICHIGAN
MEDICAL CENTER – MIDLAND, a domestic nonprofit
corporation, Jointly and severally,

     Defendants.

_____/

VEN R. JOHNSON (P39219)
S. JAY AHMAD (P43206)
JOHNSON LAW, PLC
Attorneys for Plaintiffs
535 Griswold St., Ste. 2632
Detroit, Michigan 48226
(313) 324-8300
jahmad@venjohnsonlaw.com _____/

## COMPLAINT, DEMAND FOR JURY TRIAL
## AFFIDAVITS OF MERIT

A civil action between these parties or other parties arising out of
the transaction or occurrence alleged in the complaint has been
previously filed in the Midland County Circuit Court, docket number:
14-2163-NH, assigned to Judge Michael J. Beale and previously filed in the United States
District Court Eastern District of Michigan-Northern Division, docket number 1:16-cv-12472-TLL-PTM,
assigned to
Judge Thomas L. Ludington

_____
S. JAY AHMAD (P43206)

1

NOW COMES the ESTATE OF JOHN TIMOTHY MACDORMOTT (hereinafter referred to as "Tim"), Deceased, by and through his Personal Representative, CAROLYN JOYCE MACDORMOTT, by and through her attorneys. JOHNSON LAW, PLC, and for her cause of action against the Defendants, jointly and severally, states as follows:

## COUNT I

## COMMON ALLEGATIONS

1.     That this action is brought against the UNITED STATES OF AMERICA, under the Federal Torts Claims Act, 28 USC §1346(b)(1) ; 2671 et seq.

2.     That, at the time of his death, Plaintiff's Decedent, TIM MACDORMOTT, was a resident of the City of Owosso, County of Shiawassee, State of Michigan.

3.     That Plaintiff Carolyn Joyce MacDormott, is and was at all times pertinent the duly appointed Personal Representative of the Estate of John Timothy MacDormott, Deceased, by the Gladwin County Probate Court.

4.     That, at all times pertinent hereto, Defendant, UNITED STATES OF AMERICA,  and was actively involved in operating and maintaining a medical center in the City of Beaverton (hereinafter referred to as Defendant "Medical Center") in the County of  Gladwin, State of Michigan, and at all times pertinent hereto, and for many years past, said Defendant has been engaged in the maintenance and operation of said Medical Center pursuant to , where persons afflicted with illness and disease are given care and treatment for a consideration.

5.     That, at all times pertinent hereto, Defendant "Medical Center" represented and held itself out to the public and, in particular, to Plaintiff's Decedent, Tim, that said Medical  Center was equipped, qualified and prepared to receive the public for care and treatment, and that it employed and maintained on its staff skilled and competent physicians, surgeons, internists,

2

family practitioners, residents, radiologists, interns, nurse practitioners, including but not limited to, its agent, Ann Roehrs, F.N.P., ("Roehrs"), who is a Michigan licensed nurse practitioner and who was practicing her profession, and, in general, help otherwise in the conduct and operation of said Medical Center.

6.      That at all times pertinent hereto, Defendant "Medical Center" assumed responsibility for treating Plaintiff's Decedent, Tim.

7.      That Defendant Danny D. Greig, M.D., ("Dr. Greig") is and was at all times pertinent a Michigan licensed physician specializing in emergency medicine and practicing his profession at MidMichigan Medical Center-Midland in the City of Midland, County of Midland, State of Michigan.

8.      At all times pertinent, Defendant Dr. Greig was an employee, agent and/or apparent agent of MidMichigan Medical Center - Midland ("Midland") and acting within the scope of his authority and employment.

10.     Notice of Intent to file this claim was provided to all Defendants consistent with the provisions of MCL 600.2912b prior to the filing of this lawsuit.

12.     The amount in controversy exceeds Seventy-five thousand dollar ($75,000.00) exclusive of all costs, fees, and interests.

13.     On June 26, 2013, Tim had an appointment for a cardiac evaluation with Kendra Parker, Nurse Practitioner.  NP Parker performed an EKG and said she saw a minor abnormality.  As a result of the minor abnormality, she ordered Tim to undergo a stress test on July 12, 2013.

14.     On July 12, 2013, Tim underwent a cardiac stress test.

15.     On July 13, 2013, Tim woke up with sore muscles in his calves and legs.

16.     On July 19, 2013, Tim began having pains in his lower right abdomen area.

17.    On July 21, 2013, Tim indicated to his wife that the pain in his right side was horrible and he needed to go to the Emergency Department.  Tim and Carolyn arrived at Defendant "Medical Center" at approximately 2:30 p.m.  His temperature was elevated at 99.8, and reported that he had pain the last 9 days, after a stress test.  However, the pain was now throbbing and continuously radiating down his right thigh.  It was noted that Tim's right leg appeared larger than the left leg, that the pain was an 8 out of 10, it was sharp, and there was limited motion in the right leg.  Tim indicated that since July 19, 2013, the pain he was experiencing was very hard and steady.  He advised he couldn't lay down on the examination table because it hurt too badly.

18.    That on or about 2:59 p.m., Tim was examined by a physician's assistant at Defendant "Medical Center".  She asked him a few questions about the pain level.  Tim again indicated his pain was an 8 out of 10.  Tim told her his right leg was swollen and larger than his left.  She looked at his legs and agreed his right leg looked swollen.  The physician's assistant ordered a lab test to check his clotting factors and a CBC which showed his WBC at 9.5,  his Neutrophils were high at 79.8 ( reference range 42.0-75.0) and his lymphocytes were low at 7.6 (reference range 16.0- 52.0) which indicated infection. Also, RBC was low at 4.15 and hemoglobin was low at 13.1.  The physician's assistant also ordered a pelvic x-ray and sent him for a Venous Doppler lower extremity ultrasound study to check for any blockage in the leg vein.

19.    Approximately 45 minutes after the ultrasound, Dr. Richard Hodgman, M.D. entered the room, stated he had read the Doppler and the x-ray, and they were negative and told Tim he had a pulled groin muscle and it will take 6 to 8 weeks to heal.  Tim was discharged home that day with Norco for pain.

20.    On July 23, 2013, Carolyn MacDormott tried contacting Nurse Practitioner Roehrs at Defendant "Medical Center" and spoke with the receptionist Lisa.  Carolyn asked Lisa to give

4

Roehrs a message to call them back immediately because Tim was so sick. No one from the office returned Carolyn's call.

21.     On July 24, 2013, Carolyn called Nurse Practitioner Roehrs' office again and Lisa answered the phone. Lisa advised that Nurse Practitioner Roehrs was with a patient and could not speak to Carolyn. Carolyn informed the receptionist that Tim was now nauseous and was in intense pain in his stomach. Nurse Practitioner Roehrs called Carolyn back and when Carolyn expressed her concern about Tim's pain, Nurse Practitioner Roehrs stated she read the emergency room report and that Tim only had a pulled groin muscle. Nurse Practitioner Roehrs informed Carolyn that he was just going to have to deal with the pain but she could call the pharmacy for a prescription of Tylenol #3 with Codeine.

22.     That over the next few days, Tim was so sick, he was unable to eat. He was also in such pain that he couldn't get dressed and hadn't have a bowel movement in several days.

23.     On July 29, 2013, Tim's condition continued to deteriorate and he noted the pain had radiated to his lower back area. Carolyn and Tim agreed they needed to get him to the Emergency Department.

24.     On July 29, 2013 at 10:00 a.m., Tim arrived at the Emergency Department at Defendant MidMichigan–Midland. He was seen by Defendant Dr. Greig. Dr. Greig examined Tim's back. Dr. Greig asked Tim whether he had been lying on a heating pad as there was a noticeable reddish bulge on his back about the size of a football. The redness was on the right-hand lower side.

25.     That Dr. Greig ordered a urinalysis and right hip and spine x-rays. The records indicate there was no evidence of fracture but incidentally there was mention that there was "debris and bowel gas noted throughout the colon and rectum with air filled central bowel also noted." Tim

had told Dr. Greig he had not had a bowel movement in 7 days nor had he eaten anything during that time frame.

26.     Although Dr. Greig did not order any blood work or a CBC, it was noted that the color of Tim's urine was as dark brown.  Tim's urobilinogen was high at 3.0 (reference range 0.2-1.0) as were the WBCs in his urine (2) (reference range <1).  Tim was discharged with back spasms as a diagnosis. Dr. Greig prescribed Ultram for pain and told Tim to follow up with his primary care physician within a week.

27.     On July 29, 2013, a few hours after discharge, Tim's mental status began to change and his physical symptoms worsened. He refused to eat and could not tolerate any clothing on his abdomen.  During the night he became delirious and by morning he had deteriorated so badly that he was unresponsive.

28.     On July 30, 2013, at about 8:30 a.m. Carolyn called 911.

29.     Tim was transported by ambulance to MidMichigan–Midland. Tim was seen again by Dr. Greig who noted Tim was cold and unresponsive.  Tim was found to be hypoxic and tachypneic. Tim was also noted to be severely dehydrated and the phlebotomist was unable to get a blood draw.  It took the hospital staff over 1 ½ hours to draw blood.

30.     Shortly after the blood was finally obtained, physician's assistant Lisa Stone examined Tim and performed an abdominal examination.  PA Stone advised Carolyn that she thought the problem with Tim was more likely his appendix.

31.     Tim was sedated, IV fluids and antibiotics were given and he was intubated.  He was evaluated for surgery by James R. Shepich, M.D.  A CT Scan was performed that indicated evidence of appendiceal abscess with extensive retroperitoneal air and subcutaneous air and likely a ruptured appendix.  At this point, Dr. Shepich noted that Tim had a lactic acid level of 11

6

and there was a very high chance for a poor outcome. Tim was seen by critical care and pulmonary specialists.

32.     It was decided to try aggressive fluid resuscitation for a few hours and drainage of the fluid component of the abscess to prepare him for potential surgery. The family was informed that surgery would likely be extensive and the prognosis was poor.

33.     Surgical exploration of the abdomen was carried out by Dr. Shepich and Tim was found to have grossly necrotic tissue. From the first incision there was no bleeding, with foul smelling purulent fluid poured from Tim's skin, muscle, facia and subcutaneous fat. Dr. Shepich debrided large areas, however, Tim became progressively bradycardic and ultimately suffered a PEA arrest. CPR was initiated but was unsuccessful. On July 30, 2013, Tim was pronounced deceased in the operating room.

34.     That, at all times pertinent hereto, Defendant "Medical Center", by and through its duly authorized agents, servants and/or employees, undertook to examine, diagnose, treat, attend and care for Plaintiff's Decedent, John Timothy MacDormott.

35.     That, at all times pertinent hereto, Defendant "Medical Center" by and through its duly authorized agents, servants and/or employees had the duty to provide the Plaintiff's Decedent, John Timothy MacDormott, with the services of a competent, qualified and licensed staff of physicians, surgeons, internists, family practitioners, residents, radiologists, interns, nurse practitioners, nurses, and staff , including Nurse Practioner Roehrs, who participated in the evaluation, care, treatment and/or consultation for Tim, to properly diagnose his condition and to render competent advice and assistance in the care and treatment of his case, and render same in accordance with the applicable standards of care then prevailing throughout the nation.

36.    At all times pertinent, Defendant Danny D. Greig, M.D., and any other physicians, residents or physician assistants that participated in the evaluation, care, treatment and/or consultation for Tim at Defendant MidMichigan-Midland were employees, agents and/or apparent agents and acting within the scope of their authority and employment such that Defendant MidMichigan-Midland would be responsible for all damages and injuries occasioned by their negligence and professional negligence.

37.    At all times pertinent, the Defendants were obligated to provide care and treatment to their patient, Plaintiff's decedent John Timothy MacDormott in a reasonable and prudent manner and consistent with applicable standards of care and to refrain from negligence and/or professionals negligence in doing so.

38.    Notwithstanding their respective duties and obligations, the Defendants were negligent and professionally negligent with regard to the care and treatment provided to Tim.

39.    As a direct and proximate result of the negligence and professional negligence of the Defendants, there was a substantial delay in evaluation, diagnosis and treatment of Tim's appendicitis and this allowed the appendix to reach a point where it ruptured, caused an abscess in his abdomen to such a degree that he became septic and developed grossly necrotic tissue throughout his abdomen and within a matter of weeks he deteriorated from being an active and energetic man to being unable to tolerate the surgery necessary to save his life.  The physicians, physician assistants, nurse practitioners and nurses involved in the care and treatment of Tim did not properly examine or treat him despite his numerous complaints of pain, inability to eat, constipation, elevated temperature and laboratory tests and x-rays that showed there was an infection taking hold in his body.  By the time he was finally diagnosed as having appendicitis, he had appendiceal abscess with extensive retroperitoneal air and subcutaneous air and a

ruptured appendix.  Tim's physical status by that time was such that he had to be resuscitated only 15 hours after he left the ER with a diagnosis of back spasms.  It was determined at that time he would likely not survive surgery but there was no other option.  Tim did not survive.  He expired on July 30, 2013, while on the operating table.

## COUNT II

## <u>NEGLIGENCE AND PROFESSIONAL NEGLIGENCE OF UNITED STATES OF AMERICA</u>

40.     Plaintiff reasserts and realleges all prior allegations of the Complaint as if set forth fully herein.

41.     At all times pertinent, a reasonable and prudent nurse practitioner, including Roehrs as stated herein, resident or other health care professional licensed as a nurse practitioner and/or a health care facility or professional corporation providing medical care and treatment to patients like and similar to John Timothy Macdormott owed a duty to:

   a.     Perform a thorough history and physical examination of the patient;

   b.     Appropriately listen to the patient's complaints of pain;

   c.     Recognize and appreciate the clinical significance of signs or symptoms in a patient;

   d.     Properly refer patient with signs and symptoms of appendicitis to go to the emergency department;

   e.     Properly include appendicitis in the differential diagnosis;

   f.     Properly order a CT Scan of the abdomen;

   g.     Obtain and appreciate the clinical significance of pertinent laboratory studies;

   h.     Properly admit a patient suffering from appendicitis;

   i.     Properly obtain a surgical consultation for a patient suffering from appendicitis;

j.     Properly prescribe indicated medication such as antibiotics to a patient suffering from appendicitis;

k.     Refrain from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

l.     Refrain from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

m.     Any additional acts of negligence identified through the discovery process.

40.    That the Defendant, Medical Center, an agency of the UNITED STATES OF AMERICA, by and through its duly authorized agents, servants and/or employees, including but not limited to Roehrs, in disregard of its duties and obligations to Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, and at variance to the applicable standards of care, was guilty of negligence and malpractice in the following particulars:

a.     Employing physicians, surgeons, internists, family practitioners, residents, radiologists, interns, nurse practitioners, nurses, and staff who were unskilled, unfit and incompetent for such employment and in permitting them to attend, advise, diagnose, treat and care for Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT;

b.     Failing and neglecting to provide and furnish Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, with the proper and necessary care and treatment for which he had contracted;

c.     Failing and neglecting to employ physicians, surgeons, internists, family practitioners, residents, radiologists, interns, nurse practitioners, nurses, and staff who possessed that degree of skill and learning ordinarily possessed by such individuals;

d.     Failing and neglecting to possess that requisite degree of skill and knowledge ordinarily possessed, exercised and employed by medical personnel;

e.     Failing and neglecting to draft, promulgate, adopt and/or enforce appropriate rules, regulations, policies, procedures, by-laws, orders and constitutional provisions which could and would have prevented the acts of malpractice and negligence committed against Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, and which could and should have prevented the injuries that he sustained including death, all of which could and should have prevented the

injuries that he sustained, including death, all of which could and should have been accomplished;

f.  Failing and neglecting to draft, promulgate, adopt, implement and/or enforce appropriate rules, regulations, policies, procedures, and orders which would and should have resulted in the appropriate and timely treatment of Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT's condition as herein alleged, all of which could and should have been accomplished;

g.  Failing to recognize and appreciate the clinical significance of signs or symptoms in a patient;

h..  Failing to properly refer patient with signs and symptoms of appendicitis to go to the emergency department;

i.  Failing to properly include appendicitis in the differential diagnosis;

j.  Failing to properly order a CT Scan of the abdomen;

i.  Failing to obtain and appreciate the clinical significance of pertinent laboratory studies;

j.  Failing to properly admit a patient suffering from appendicitis;

k.  Failing to properly obtain a surgical consultation for a patient suffering from appendicitis;

l.  Failing to properly prescribe indicated medication such as antibiotics to a patient suffering from appendicitis;

m.  Failing to refrain from misdiagnosing the patient's symptoms as pulled groin and/or simple  back pain;

n.  ling to refrain from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

o.  Other acts of malpractice to be determined by way of discovery.

41.  That the acts and/or omissions constituting negligence and malpractice of the Defendant

"Medical Center" by and through its duly authorized agents, servants and/or employees, as

hereinbefore alleged, directly and proximately caused and/or contributed to Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT's death on July 30, 2013.

42.     That at the time of his death, Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, was survived by his wife and five children.

43.     That as a result of the wrongful death of Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, the Plaintiff, CAROLYN JOYCE MACDORMOTT, as Personal Representative, now brings this action pursuant to the Wrongful Death Statute of the State of Michigan on behalf of all those persons entitled to recovery thereunder.

44.     That the standard Form 95 (Claim for Damage, Injury or Death) was filed with the appropriate governmental agency on May 27, 2015.

45.     That this Complaint was filed after six months of receipt by the appropriate government agency of the standard Form 95.

46.     That, Plaintiff CAROLYN JOYCE MACDORMOTT, as Personal Representative of the Estate of JOHN TIMOTHY MACDORMOTT, Deceased, is entitled to recover herein such damages as shall be deemed fair and just with reference to pecuniary injuries resulting from the death of said Decedent to those persons who may be entitled to such damages when recovered. A fair and just measure of such pecuniary injuries include the following for which Plaintiff makes demand:

    a.     Reasonable compensation for the pain and suffering and mental anguish endured by Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, during the interim period of time extending between Defendant's negligence and malpractice and the ultimate expiration of Plaintiff's Decedent;

    b.     The necessary and reasonable expenses incurred or paid by reason of hospitals, doctors, medical, funeral and burial expenses;

    c.     Loss of financial support;

d.      Loss of services of Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, which includes the value of such services as Plaintiff's Decedent would have been accustomed to performing in the household and special services uniquely performed as a husband and father; and

e.      The loss to Decedent's children and wife of his love, companionship, nuture, instruction, support and moral/physical education, religious training, affection and comfort, as well as and including, loss of society.

WHEREFORE, Plaintiff, CAROLYN JOYCE MACDORMOTT, as Personal Representative of the Estate of JOHN TIMOTHY MACDORMOTT, Deceased, claims judgment against the Defendants, THE UNITED SATES OF AMERICA, for whatever amount said Plaintiff is found to be entitled, as determined by the trier, together with interest, costs and attorney fees.

## COUNT III.

## NEGLIGENCE AND PROFESSIONAL NEGLIGENCE OF DANNY D GREIG, M.D. AND MIDMICHIGAN MEDICAL CENTER-MIDLAND

47.     Plaintiff reasserts and realleges all prior allegations of the Complaint as if set forth fully herein.

48.     At all times pertinent, Defendant Danny D. Greig, M.D., as a reasonable and prudent physician, resident or other health care professional specializing in Emergency Medicine and/or Defendant MidMichigan-Midland, a health care facility or professional corporation providing Emergency Medicine care and treatment to patients like and similar to JOHN TIMOTHY MACDORMOTT owed a duty to:

a.      Obtain and appreciate a complete and accurate history;

b.      Appropriately listen to the patient's complaints of pain;

c.      Recognize and appreciate the clinical significance of signs or symptoms in a patient;

    d.      Properly refer patient with signs and symptoms of appendicitis to go to the emergency department;

    e.      Properly include appendicitis in the differential diagnosis;

    f.      Properly order a CT Scan of the abdomen;

    g.      Obtain and appreciate the clinical significance of pertinent laboratory studies;

    h.      Properly admit a patient suffering from appendicitis;

    i.      Properly obtain a surgical consultation for a patient suffering from appendicitis;

    j.      Properly prescribe indicated medication such as antibiotics to a patient suffering from appendicitis;

    k.      Refrain from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

    l.      Refrain from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

    m.      Any additional acts of negligence identified through the discovery process.

49.    Notwithstanding their duties and obligations to the contrary, Defendant Dr. Greig and any other physician assistant staff at MidMichigan-Midland that participated in the evaluation, care, treatment and/or consultation for Tim at MidMichigan-Midland failed to comport with the applicable standards of care as enumerated above and their failure to do so was negligent and professionally negligent.

50.    As a direct and proximate result of the negligence and professional negligence of the Defendants, Plaintiff claims and is entitled to recover all damages allowable by way of the Wrongful Death Act, including but not limited to the following:

    a.      Reasonable compensation for the pain and suffering and mental anguish endured by Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, during the interim period of time extending between

       Defendant's negligence and malpractice and the ultimate expiration of Plaintiff's Decedent;

b.     The necessary and reasonable expenses incurred or paid by reason of hospitals, doctors, medical, funeral and burial expenses;

c.     Loss of financial support;

d.     Loss of services of Plaintiff's Decedent, JOHN TIMOTHY MACDORMOTT, which includes the value of such services as Plaintiff's Decedent would have been accustomed to performing in the household and special services uniquely performed as a husband and father;

e.     The loss to Decedent's children and wife of his love, companionship, nuture, instruction, support and moral/physical education, religious training, affection and comfort, as well as and including, loss of society; and

g.     All other Damages learned through the course of discovery and otherwise recoverable under the Michigan Wrongful Death Act.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally in an amount that is fair and reasonable under the circumstances and which will clearly exceed the seventy five thousand dollar ($75,000.00) jurisdictional requirement of this Court, together with interest, costs and attorney fees as permitted.

## COUNT IV.

## LOSS OF CONSORTIUM

51.    Plaintiffs repeat and reallege their allegations contained in paragraphs 1 through 43 as though fully set forth herein.

52.    At all times relevant to this lawsuit, CAROLYN JOYCE MACDORMOTT was the lawful wife of JOHN TIMOTHY MACDORMOTT.

53    As a direct and proximate cause of the negligence of all of the defendants, Carolyn has, and will continue to suffer damages into the future, including, but not limited to:

a. The reasonable expense of necessary medical care, treatment and services received by her husband, Tim;

b. The reasonable value of the services of her husband of which he has been deprived;

c. The reasonable value of society, companionship, and sexual relationship with her husband of which she has been deprived;

    a. All other damages learned through the course of discovery and allowable under Michigan law.

WHEREFORE, Plaintiffs demand judgment in their favor and against the Defendants, jointly and severally in an amount that is fair and reasonable under the circumstances and which will clearly exceed the twenty five thousand dollar ($25,000.00) jurisdictional requirement of this Court, together with interest, costs and attorney fees as permitted.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

Respectfully Submitted,

JOHNSON LAW. PLC

VEN R. JOHNSON (P39219
S. JAY AHMAD (P43206)
Attorneys for Plaintiffs
535 Griswold, Ste. 2632
Detroit, MI 48226
(313) 324-8300
jahmad@venjohnsonlaw.com

Dated: January 17, 2017

## **AFFIDAVIT OF MERIT**

STATE OF WASHINGTON)

COUNTY OF KITSAP        )

§§

I, Karen Huisinga,  MN, ARNP, FNP, by this Affidavit, state that during the relevant time period at issue in this matter,  I was a licensed and practicing Nurse Practitioner and Registered Nurse, specializing in and devoting the majority of my clinical practice to Primary Care attest to the following:

1.      I have read the Notice of Intent to File Claim prepared on behalf of John Timothy MacDormott, deceased.

2.      I have reviewed all of the records supplied to me by the claimant's attorney concerning the allegations contained in the Notice including those from each emergency room visit and admission to MidMichigan Medical Centers and the death certificate.

3.      In my opinion, the applicable standard of care requires a reasonable and prudent Nurse Practitioner to:

a.      Perform a thorough history and physical examination of the patient;

b.      Appropriately listen to the patient's complaints of pain;

c.      Recognize and appreciate the clinical significance of signs or symptoms in a patient;

d.      Properly refer patient with signs and symptoms of appendicitis to go to the emergency department;

e.      Properly include appendicitis in the differential diagnosis;

f.      Properly order a CT Scan of the abdomen;

g.      Obtain and appreciate the clinical significance of pertinent laboratory studies;

h.      Properly admit a patient suffering from appendicitis;

i.       Properly obtain a surgical consultation for a patient suffering from appendicitis;

j.       Properly prescribe indicated medication such as antibiotics to a patient suffering from appendicitis;

k.      Refrain from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

l.       Refrain from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

m.     Any additional acts of negligence identified through the discovery process.

4.      In my opinion, the applicable standards of care were breached by the health professionals identified as receiving the Notice of Intent.

5.      The actions that should have been taken or omitted in order to comport with the applicable standards of care and practice as to the care and treatment rendered by Ann Roehr, residents and staff at MidMichigan Medical Offices-Beaverton, that participated in the care, treatment, evaluation and/or consultation for John Timothy MacDormott include the following:

a.      Performed a thorough history and physical examination of the patient;

b.      Appropriately listened to the patient's complaints of pain;

c.      Recognized and appreciated the clinical significance of signs or symptoms in a patient;

d.      Properly referred patient with signs and symptoms of appendicitis to go to the emergency department;

e.      Properly included appendicitis in the differential diagnosis;

f.       Properly ordered a CT Scan of the abdomen;

g.      Obtained and appreciated the clinical significance of pertinent laboratory studies;

h.      Properly admitted a patient suffering from appendicitis;

2

i.   Properly obtained a surgical consultation for a patient suffering from appendicitis;

j.   Properly prescribed indicated medication such as antibiotics to a patient suffering from appendicitis;

k.   Refrained from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

l.   Refrained from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

m.   Any additional acts of negligence identified through the discovery process.

6.   As a direct and proximate result of the various breaches of the applicable standards of care identified above, there was a substantial delay in evaluation, diagnosis and treatment of John's appendicitis and this allowed the appendix to reach a point where it ruptured, caused an abscess in his abdomen to such a degree that he became septic and developed grossly necrotic tissue throughout his abdomen and within a matter of weeks he deteriorated from being an active and energetic man to being unable to tolerate the surgery necessary to save his life. The physicians, physician assistants, nurse practitioners and nurses involved in the care and treatment of John did not properly examine or treat him despite his numerous complaints of pain, inability to eat, constipation, elevated temperature and laboratory tests and x-rays that showed there was an infection taking hold in his body. By the time he was finally diagnosed as having appendicitis, he had appendiceal abscess with extensive retroperitoneal air and subcutaneous air and a ruptured appendix. As a result of the breach of the standard of care, the estate of John Timothy MacDormott has suffered the following damages: His death was the direct and proximate result of the various deficiencies in care provided by the physicians and other health care providers identified above.

3

_Karen Huisinga_

Karen HUISINGA, MN, ARNP, FNP

Subscribed and sworn to before me on
this _23_ day of _Oct_ 20_14_

_[signature]_
Notary Public _Washington_
_King_ County,
My Commission Expires: _7-19-17_

ROWENA IBE
COMMISSION EXPIRES
NOTARY
PUBLIC
7-19-17
STATE OF WASHINGTON

4

# AFFIDAVIT OF MERIT

STATE OF WISCONSIN)

§§

COUNTY OF PORTAGE)

I, Randal F. Wojciehoski, D.O., by this Affidavit, state that during the relevant time period at issue in this matter, I was a licensed and practicing emergency medicine physician and attest to the following:

1.     I have read the Notice of Intent to File Claim prepared on behalf of John Timothy MacDormott, deceased.

2.     I have reviewed all of the records supplied to me by the claimant's attorney concerning the allegations contained in the Notice including those from each emergency room visit and admission to Mid-Michigan Medical Centers and the death certificate.

3.     In my opinion, the applicable standard of care requires a reasonable and prudent emergency medicine physician to:

    a.  Obtain and appreciate a complete and accurate history;

    b.  Appropriately listen to the patient's complaints of pain;

    c.  Recognize and appreciate the clinical significance of signs or symptoms in a patient;

    d.  Properly refer patient with signs and symptoms of appendicitis to go to the emergency department;

    e.  Properly include appendicitis in the differential diagnosis;

    f.  Properly order a CT Scan of the abdomen;

    g.  Obtain and appreciate the clinical significance of pertinent laboratory studies;

    h.  Properly admit a patient suffering from appendicitis;

1

i.    Properly obtain a surgical consultation for a patient suffering from appendicitis;

j.    Properly prescribe indicated medication such as antibiotics to a patient suffering from appendicitis;

k.    Refrain from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

l.    Refrain from discharging a patient with lower abdominal pain, lethargy, loss of appetite;

m.    Any additional acts of negligence identified through the discovery process.

4.    In my opinion, the applicable standards of care were breached by the health professionals identified as receiving the Notice of Intent.

5.    The actions that should have been taken or omitted in order to comport with the applicable standards of care and practice as to the care and treatment rendered by Danny D. Grieg, M.D. and the other physicians, residents and hospital staff at Mid-Michigan Medical Center-Midland, that participated in the care, treatment, evaluation and/or consultation for John Timothy MacDormott include the following:

a.    Obtained and appreciated a complete and accurate history;

b.    Appropriately listened to the patient's complaints of pain;

c.    Recognized and appreciated the clinical significance of signs or symptoms in a patient;

d.    Properly referred patient with signs and symptoms of appendicitis to go to the emergency department;

e.    Properly included appendicitis in the differential diagnosis;

f.    Properly ordered a CT Scan of the abdomen;

g.    Obtained and appreciated the clinical significance of pertinent laboratory studies;

h.    Properly admitted a patient suffering from appendicitis;

2

i.      Properly obtained a surgical consultation for a patient suffering from appendicitis;

j.      Properly prescribed indicated medication such as antibiotics to a patient suffering from appendicitis;

k.      Refrained from misdiagnosing the patient's symptoms as pulled groin and/or simple back pain;

l.      Refrained from discharging a patient with lower abdominal pain, lethargy, and loss of appetite;

m.      Any additional acts of negligence identified through the discovery process.

6.     As a direct and proximate result of the various breaches of the applicable standards of care identified above, there was a substantial delay in evaluation, diagnosis and treatment of John's appendicitis and this allowed the appendix to reach a point where it ruptured, caused an abscess in his abdomen to such a degree that he became septic and developed grossly necrotic tissue throughout his abdomen and within a matter of weeks he deteriorated from being an active and energetic man to being unable to tolerate the surgery necessary to save his life. The physicians, physician assistants, nurse practitioners and nurses involved in the care and treatment of John did not properly examine or treat him despite his numerous complaints of pain, inability to eat, constipation, elevated temperature and laboratory tests and x-rays that showed there was an infection taking hold in his body. By the time he was finally diagnosed as having appendicitis, he had appendiceal abscess with extensive retroperitoneal air and subcutaneous air and a ruptured appendix. As a result of the breach of the standard of care, the estate of John Timothy MacDormott has suffered the following damages: His death was the direct and proximate result of the various deficiencies in care provided by the physicians and other health care providers identified above.

3

RANDAL F. WOJCIEŃOSKI, D.O.

Subscribed and sworn to before me on
this 20th day of October 20 14

Notary Public _Appleton Wl_
_Outagamie_ County.
My Commission Expires: _5-11-2018_

NICHOLE M. BRUEGGE
NOTARY
PUBLIC
STATE OF WISCONSIN

4